**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JERMAINE WILLIAMS,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **NO. 2:17-cv-02697-RBS** |
| **CITY OF PHILADELPHIA, ET AL.,** | : | |
| **Defendants.** | : | **JURY TRIAL DEMANDED** |

Defendants, City of Philadelphia Office of the Sheriff ("CPOS"), Deputy Sheriff Javier Velasco and Deputy Sheriff Victor Lopez, hereby file this Memorandum of Law in Support of Summary Judgment, along with their Statement of Undisputed Material Facts and Exhibits A through C, pursuant to Rule 56 of the Federal Rules of Civil Procedure and This Honorable Court's Policies and Procedures.

## I. INTRODUCTION

This is a motion for summary judgment filed by Defendants CPOS and Deputies Velasco and Lopez in their individual capacity.

This case arises from allegations in the plaintiff's Amended Complaint that on November 14, 2016, the deputies were deliberately indifferent to the safety of the plaintiff by failing to properly secure him and his wheelchair during a trip from SCI-Graterford to the Criminal Justice Center ("CJC") in Philadelphia. In the Amended Complaint, the plaintiff claims Deputy Velasco was driving the van at an unsafe speed around City Hall, and on the east side of City Hall, he suddenly stopped, causing the plaintiff to be thrown out of his wheelchair head first into the metal grate of the van.

The deputies deny they are liable and that they have no idea why or how the plaintiff fell off his wheelchair as the van was traveling around City Hall, at around 10:00 a.m., at a very slow speed due to the van's size and the usual heavy traffic around Penn Square. Through discovery, the plaintiff has produced no evidence to corroborate the bald allegations in his Amended Complaint.

The plaintiff also claims CPOS is liable for failing to train the deputies, and that the failure directly caused them to violate the plaintiff's 8th Amendment right against cruel and unusual punishment. Through discovery, the plaintiff has not produced sufficient evidence for a reasonable jury to conclude that 1) there was an underlying constitutional violation, or 2) the plaintiff has not developed sufficient evidence for a reasonable jury to conclude that CPOS has an unconstitutional policy of failing to train deputies that was the moving force behind the alleged deprivation of his right against cruel unusual punishment.

The plaintiff also claims CPOS and the deputies are liable on a state common law claim of negligence. The plaintiff has failed to produce sufficient evidence for a jury to determine that Deputy Velasco negligently operated the van around City Hall.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

CPOS and the deputies incorporate by reference their Statement of Undisputed Material Facts as if set forth herein at length.

## III. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 249 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id*. All inferences must be drawn, and all doubts must be resolved, in favor of the non-moving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985). "An inference based on speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Modaffare v. Owens-Brockway Glass Container, Inc.*, 643 F. Supp. 2d 697, 700 (E.D. Pa. 2009); *and see Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990) (same).

When moving for summary judgment, the moving party bears the initial burden of identifying those portions of the record that he believes demonstrate the absence of material fact disputes. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the moving party and may not rest on mere denials. *See id*. at 321 n.3; *First Natl. Bank of Pa. v. Lincoln Natl. Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir. 1987). And, when ruling on a motion for summary judgment, the Court may only rely on admissible evidence. *See, e.g., Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 94-95 (3d Cir. 1999). Specifically, the Court cannot consider inadmissible hearsay when evaluating the facts for summary judgment purposes. *Whitfield v. Pa. Gas Works*, 1997 WL 732463, at *3 (E.D. Pa. Nov. 25, 1997) (citing *Stelwagon Mfg. Co. v. Tarmac Roofing*, 63 F.3d 1267, 1275 n. 17 (3d Cir. 1995)).

In a case where the non-moving party is the plaintiff and therefore bears the burden of proof on a dispositive issue for trial, the non-moving party must go beyond the pleadings, and by his own affidavits or declarations, or by the depositions and admissions on file,

identify specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The non-moving party must adduce more than a mere scintilla of evidence in her favor to defeat the moving party's summary judgment motion. *See Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989). The "[p]laintiff cannot simply reassert factually unsupported allegations in his pleadings." *Poles v. St. Joseph's Univ.*, 1995 WL 542246 at *5 (E.D. Pa. September 11, 1995) citing *Celotex*, 477 U.S. at 325. "Plaintiff must present **affirmative evidence** in order to defeat a properly supported motion for [summary] judgment." *Id*. (emphasis added). Although all justifiable inferences must be drawn in favor of the non-moving party, the "moving party is entitled to summary judgment where no reasonable resolution of conflicting evidence and inferences therefrom could result in a judgment for the non-moving party." *Schwartz v. Hospital of Univ. of Pa.*, 1993 WL 153810 at *2 (E.D. Pa. May 7, 1993) citing *Bank of Am. Nat'l Trust and Sav. Ass'n v. Hotel Rittenhouse Assoc.*, 595 F. Supp. 800, 802 (E.D. Pa. 1986). "The plaintiff must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id*. quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## IV. ARGUMENT

### A. Deputy Velasco, Deputy Lopez and the CPOS are entitled to summary judgment on the Plaintiff's 8th Amendment and failure to train claims in Count One of the Amended Complaint.

#### 1. Deputy Velasco and Deputy Lopez are entitled to summary judgment the plaintiff's Section 1983 claim against them in Count One of the Amended Complaint.

The plaintiff's claims against the deputies is based on the 8th Amendment prohibition against cruel and unusual punishment. "The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners against the 'unnecessary and

wanton infliction of pain.'" *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The Eighth Amendment protection from cruel and unusual punishment is made applicable to the states through the Fourteenth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 101 (1976). To prove a claim under the Eighth Amendment's cruel and unusual punishment clause, the plaintiff must establish through admissible evidence that "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "'Deliberate indifference' in this context is a subjective standard: 'the prison official-defendant must have known or been aware of the excessive risk to inmate safety.'" *Id*. (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)).

Decisional law in the Eighth Circuit holds that "a failure to provide a seatbelt to a prisoner while driving in a manner that puts the prisoner at risk of injury can constitute deliberate indifference to a prisoner's safety and health." *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008). In the *Brown* case, the plaintiff alleged that he and the other inmates being transported in a van complained to the defendant officer that they needed to be secured with a seatbelt, but the officer refused. *Id*. at 559. The Court noted that, because the plaintiff was prevented from securing his own seatbelt (he was in handcuffs and shackles) and made multiple requests to be secured, the defendant officer was aware of the substantial risk of harm to the plaintiff. *Id*. at 560. District Courts within the Third Circuit have held that an Eighth Amendment claim exists when a defendant officer transports an

inmate in a vehicle that lacks adequate safety restraints, drives the vehicle recklessly while ignoring the plaintiff's requests to slow down, and causing injury to the plaintiff. *See Stewart v. Wenerowicz*, 2015 WL 5092865, at *9 (E.D. Pa. Aug. 27, 2015); *Otero v. Catalogne*, 2010 WL 3883444, at *11 (W.D. Pa. Sept. 28, 2010). If an officer who is a passenger in a prison transport vehicle "fails or refuses to intervene when a constitutional violation . . . takes place in his presence," and he has a "realistic and reasonably opportunity to intervene," then he can be directly liable under 42 U.S.C. § 1983. *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).

Through discovery, the plaintiff has failed to produce or develop admissible evidence that: 1) the van was not equipped with adequate seatbelts and other safety apparatus to secure wheelchairs; 2) the prisoners were shackled; 3) the other prisoners in the van complained on several occasions during the trip from SCI-Graterford to the CJC about the unsafe situation and the way in which Deputy Velasco was driving; and 4) Deputy Velasco slammed on the brakes while traveling around City Hall at an unsafe speed causing the plaintiff to be injured. All the plaintiff has done is make bald allegations in his Amended Complaint that are unsupported by the record.

What the record shows is that the van is adequately equipped to safely secure inmates confined in wheelchairs. It shows that Deputy Velasco followed his training and properly secured the plaintiff before driving from Graterford to the CJC. The record also shows that the traffic was very heavy around City Hall as the van neared the CJC, so the bald allegation that Deputy Velasco drove around City Hall at an unsafe speed is unsupported by the record. Furthermore, the record shows that neither deputy heard any

inmate complain about the way Deputy Velasco was driving the van or about the lack of adequate equipment in the van to ensure their safety.

Without admissible evidence to support the plaintiff's allegations in the Amended Complaint, the Court must grant summary judgment in favor of the deputies.

**2. The City of Philadelphia Office of the Sheriff is entitled to summary judgment on the plaintiff's failure to train claim in Count One of the Amended Complaint.**

Claims against the City are analyzed under the standard for municipal liability set forth in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). A municipality will not be held liable under the doctrine of *respondeat superior* for the misconduct of employees. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). The City can only be liable under § 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy by a policymaker or from an informally adopted custom that is so well-settled and permanent as virtually to constitute law. *See Beck v. City of Pittsburgh*, 89 F.3d 988, 972 (3dCir. 1996) (citing *Monell*, 436 U.S. 658); *Andrews, supra*, at 1480; *see also Fletcher v. O'Donnell*, 867 F.2d 791, 793-794 (3d Cir.) ("Custom may be established by proof of knowledge and acquiescence."), cert. denied, 492 U.S. 919 (1989). To succeed on a *Monell* claim, Plaintiff must establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom. *See Monell*, 436 U.S. at 690-695.

Meeting the burden of proof for governmental liability under *Monell* has been approached in two different ways: By reliance on an official policy, or by adducing evidence of a municipal custom. "Policy is made when a 'decisionmaker possess[ing] final

authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law. *Andrews,* 895 F.2d at 1480; *see also Fletcher v. O'Donnell*, 867 F.2d 791, 793-794 (3d Cir.) ("Custom may be established by proof of knowledge and acquiescence"), *cert. denied*, 492 U.S. 919 (1989). *Monell* liability must be founded upon evidence that the government unit itself supported a violation of constitutional rights. *Bielevicz v. Dubinon*, 915 F.2d 845, 849-850 (3d Cir. 1990) (citing Monell).

Thus, municipal liability attaches only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. Before municipal liability will be imposed, the plaintiff must prove that the municipality's alleged unconstitutional practices are "so widespread as to have the force of law." *Bd. of Commrs. of Bryan Co. v. Brown*, 520 U.S. 397, 404 (1997); *accord, Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996); *Andrews, supra*, 895 F.2d at 1480. "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, *supra*, 475 U.S. at 479 (emphasis supplied). "[T]o be sure, 'official policy' often refers to formal rules or understandings – often but not always committed to writing – that are intended to, and do,

establish fixed plans of action to be followed under similar circumstances consistently and over time." *Id.* at 480-481.

The plaintiff baldly claims the CPOS has failed to train deputies properly in all aspects of the plaintiff's transportation. (See Amended Complaint (ECF Doc. 10, at **first** ¶ 25.) His failure to train claim is legally flawed. In *City of Canton v. Harris*, the Supreme Court discussed a municipality's potential liability under §1983 for an alleged failure to properly train its employees. *City of Canton v. Harris*, 489 U.S. 378, 387-392 (1989). In *Canton* the Court explained that there are "limited circumstances" in which an allegation of a municipality's failure to train can be the basis of a § 1983 claim against the municipality. *Id*. at 387. The Court held that "the inadequacy of [employee] training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come in contact." *Id*. at 388. The Court explained that a municipality may be liable under § 1983 for the failure to train "only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a policy as defined by our prior cases." *Id*. at 389. The focus in this determination is on the adequacy of the training program in relation to the tasks the particular employees must perform and the connection between the identified deficiency in the municipality's training program and the ultimate injury. *Id*. at 390-91. To succeed on a § 1983 claim, the party must prove that the training deficiency actually caused the injury. *Id*. at 391.

The *Canton* Court further explained that it is not enough to show that the municipality is responsible for the training program in question, *id*., and it is not enough to establish that a particular employee has been unsatisfactorily trained, for the employee's

shortcomings may be the result of factors other than a faulty training program. *Id*. at 390. It is not enough to prove that an incident would not have happened if an employee had "better" or "more" training, because even the best-trained employees will occasionally make mistakes. *Id*. at 391. As the *Canton* Court recognized, "in virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *Id*. at 392. The *Canton* Court thus concluded that a municipality's alleged failure to train will give rise to liability only where the failure to train "reflects deliberate indifference to the constitutional rights of its inhabitants." *Id*. A failure to train officers "can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate.'" *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998).

The plaintiff in this case has failed to produce or develop admissible evidence that a final policymaker of the CPOS knew that deputies in the TU needed more or better training on how to properly secure a wheelchair-bound inmate in a van equipped to transport inmates in wheelchairs. As Chief Evans testified, fastening a seatbelt that is identical to a seatbelt in a car requires commonsense. Also, the driver's manual of the van provides instructions on how to secure an inmate confined in a wheelchair. Moreover, Chief Evans makes sure all deputies in the TU know how to secure an inmate confined in a wheelchair in the van. This is done through on-the-job training. The policy does not specifically guide deputies through each step, but the policy informs deputies that they

"shall give special care and consideration to prisoners who are physically handicapped." Deputies learn how to secure a wheelchair-bound inmate by watching experienced deputies use the safety equipment in the van.

An undisputed fact that speaks volumes about the adequate training deputies receive in the TU on how to properly secure a wheelchair-bound inmate in a van is that, in the past five-and-a-half years, 1,145 wheelchair-bound inmates have been transported by the TU; and out of those 1,145 inmates being transported, only three transportation incidents were reported and only two of those three reported required taking the inmate to the hospital (including the plaintiff's incident on November 14, 2016). This demonstrates that the training program is effective and the deputies transporting such inmates perform their job safely and successfully. With such a miniscule number of reported incidents over the past five-and-a-half years, there is absolutely no evidence that the CPOS policymaker (the Sheriff) was on notice of a widespread problem with safely transporting inmates confined in wheelchairs.

As demonstrated by the record, there is no underlying constitutional violation to support a claim against the CPOS. Moreover, there is no admissible evidence in the record that supports the bald allegations in the **first** ¶ 25 of the Amended Complaint, regarding the plaintiff's failure to train claim.

**B. Defendants are entitled to summary judgment on the Plaintiff's negligence claim in Count Two of the Amended Complaint.**

In Count Two of the Amended Complaint, the plaintiff seeks to recover damages against Defendants based on the motor vehicle exception to immunity under Pennsylvania's Political Subdivision Tort Claims Act. As the facts alleged in determining these claims are intertwined with the facts alleged in the plaintiff's federal claims,

Defendants respectfully request the Court to exercise supplemental jurisdiction over these claims. *See Bright v. Westmoreland County*, 443 F.3d 276, 286 (3d Cir. 2006) (the trial court has discretion to exercise supplemental jurisdiction over pendent state claims out of respect for judicial economy, convenience and fairness to the parties). The facts developed through discovery in this case relate to and are intertwined in the federal and state law claims asserted by the plaintiff. If the Court were to grant summary judgment on the federal claims, summary judgment should also be granted on the state law claims. Declining jurisdiction over the state law claims could result in inconsistent outcomes. Therefore, this Court should retain jurisdiction over the plaintiff's supplemental state law claims out of respect for judicial economy, convenience and fairness to the parties.

***Political Subdivision Tort Claims Act***

The individual defendants, as employees of the CPOS, enjoy the privileges and immunities available to the CPOS under the Political Subdivision Tort Claims Act ("TCA"), 42 PA. CONS. STAT. § 8541 *et seq.* The Tort Claims Act provides:

> An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter.

ID. at § 8545. The TCA provides the CPOS with general immunity from tort liability, as follows:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 PA. CONS. STAT. ANN. § 8541. However, the Act provides for a limited waiver of this general immunity as follows:

> (a) *Liability imposed.* A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
>
> (1) The damages would be recoverable under common law or statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally)…; and
>
> (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitute a crime, actual fraud, actual malice or willful misconduct.
>
> (b) *Acts which may impose liability.* The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:
>
> (1) *Vehicle liability*.-- . . .;
>
> (2) *Care, custody or control of personal property*.-- . . .;
>
> (3) *Real property*.-- . . .;
>
> (4) *Trees, traffic controls, and street lighting*.-- . . .;
>
> (5) *Utility service facilities*.-- . . .;
>
> (6) *Streets*.--. . .;
>
> (7) *Sidewalks*.--. . .; and
>
> (8) *Care, custody and control of animal*. --. . . .

42 PA. CONS. STAT. ANN. § 8542 (emphasis added). These eight exceptions to immunity must be narrowly interpreted, given the expressed legislative intent to insulate local governments or political subdivisions from tort liability. *Lockwood v. City of Pittsburgh*, 751 A.2d 1136 (Pa. 2000); *Snyder v. Harmon*, 562 A.2d 307 (Pa. 1989); *Love v. City of Philadelphia*, 543 A.2d 531 (Pa. 1988); *Mascaro v. Youth Study Center*, 523 A.2d 1118 (Pa. 1987).

As discussed above in Section A.1, the plaintiff has not produced or developed sufficient admissible evidence that he fell off his wheelchair because of the way in which he was secured and the way in which Deputy Velasco operated the van during the trip from Graterford to the CJC. Rather, the evidence shows Deputy Velasco properly secured the plaintiff before leaving Graterford and shows that he drove in a safe manner. Because Deputy Velasco properly secured the plaintiff before leaving Graterford, the plaintiff must have released the seatbelt at some point during the trip. And to claim that Deputy Velasco sped around City Hall through heavy traffic in a large van defies reality. No person can drive at a high rate of speed around City Hall on a weekday at 10:00 a.m.

The plaintiff has failed to produce or develop sufficient evidence to overcome the threshold requirement to the motor vehicle exception to immunity. That is, he has failed to show that his "damages would be recoverable under common law or statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally)." 42 PA. CONS. STAT. ANN. § 8542(a)(2).

**I. CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court to grant summary judgment on all claims and dismiss the Amended Complaint with prejudice.

Respectfully submitted,

/s/ *Matthew K. Hubbard*
MATTHEW KEVIN HUBBARD
Senior Attorney
City of Philadelphia Law Department
Attorney for Defendants

Dated: September 20, 2019