# EXHIBIT "1"

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

JERMAINE WILLIAMS,

Plaintiff

                     No. 2:17-cv-02697-RBS

CITY OF PHILADELPHIA Et. Al.

Defendants

### DECLARATION OF PLAINTIFF, JERMAINE WILLIAMS, PURSUANT TO 28 USC § 1746 AND FED. R.CIV.P.56(c)(4)

1. I am plaintiff in this case and am competent to testify about the matters stated in this declaration.
2. On November 14, 2016 I was in a wheelchair, was being transported in a Sheriff's van, driven by Defendant Valasco, to criminal court at the CJC ("the trip"). No and/or no adequate seatbelts or other safety apparatus for securing the wheelchair to the van or me to the wheelchair or the otheroccupants to their seats inside the van were used on the trip.
3. Those safety precautions that were available at the time were not properly used to secure me into the wheelchair and the wheelchair to the van.
4. The other prisoners were shackled and handcuffed.
5. The prisoners complained to the sheriff's officer defendants about the unsafe situation they were in, specifically Valasco's driving which caused numerous inmates to sway side to side and back and forth during the trip.
6. My wheelchair was lifting off the floor of the van, during the trip, which should not happen.
7. Several prisoners complained on several occasions during the trip for the driver to slow down.
8. In response, seemingly acknowledging the unsafe conditions inside the van, the

defendants told them "don't come to jail."

9. During the trip the prisoners complained several times because they saw my wheelchair sliding back and forth while they were riding in the van with me.
10. The correctional officers ignored these entreaties.
11. During the trip, the driver of the van was traveling too fast for the conditions around a curve and had to abruptly slam on the brakes causing several inmates in the van to eject from their seats ("the accident").
12. I never released myself from any alleged restraints in the van, nor can I even imagine any motivation I might have had to do so.
13. I was then was thrown out of my wheelchair head first into the metal grate of the van, ending up upside down, with two prisoners on top of me.
14. A City of Philadelphia EMS ambulance was called to the scene.
15. I was eventually taken to the emergency room at Hahnemann Hospital
16. I was admitted to the trauma unit at Hahnemann Hospital and remained there for three (3) days.
17. I believe that between the 2014 and the date of the accident, I was driven by the City Sheriff's personnel to court in Philadelphia from Graterford state prison on at least 10roundtrips ("trips") while I was in a wheelchair.
18. On none of those trips was I properly secured or harnessed to the wheelchair in the van by the sheriff's employees.
19. I believe it was not until early 2017, after the accident, that practices of the sheriff were changed, as at that time a lieutenant actually got in the van and checked to see that I and my wheelchair were secure before "takeoff";
20. I observed that a majority of the sheriff's personnel involved in those trips prior to 2017, were not trained and/or not knowledgeable in practice about how to properly secure a wheelchaired prisoner in a van.
21. Some of them actually admitted that they did not know how to do it properly, one specifically told me prior to the accident it was a "short trip" and not to worry.
22. The accident – and my injuries–were enlarged by my being both inappropriately <u>handcuffed and shackled</u> while in my wheelchair, precluding me from using his hands or feet to steady myself while in the van, and, that and on most prior trips .
23. The practice and/or procedure was changed to fasten his seatbelt from behind on the January 2017 trip, supervised by the lieutenant, allowing him use of his hands to secure himself.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 7, 2019.

*[signature]*                                    10/3/19