IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JERMAINE WILLIAMS                                :
                                                 :        CIVIL ACTION
                    v.                           :
                                                 :        NO. 17-2697
CITY OF PHILADELPHIA                             :
OFFICE OF THE SHERIFF, ET AL.                    :

## MEMORANDUM

**SURRICK, J.**                                        **JANUARY  21  , 2020**

Presently before the Court is Defendants' Motion for Summary Judgment (ECF No. 38)
and Plaintiff's response thereto (ECF No. 39). For the following reasons, Defendants' Motion
will be denied.

## I.      BACKGROUND

Plaintiff Jermaine Williams, a former prisoner at the State Correctional Institution at
Graterford, Pennsylvania ("SCI Graterford"), asserts claims against Deputy Sheriff Officers
Victor Lopez and Javier Valasco,[1] and their employer, the City of Philadelphia Office of the
Sheriff, under 42 U.S.C. § 1983 and Pennsylvania law. Williams alleges that on November 14,
2016, Defendants' recklessness, deliberate indifference to his safety, and negligence caused him
to be thrown out of his wheelchair sustaining injuries while being transported by Defendants
from SCI Graterford to the Criminal Justice Center in Philadelphia ("CJC").

---

[1] In the Amended Complaint, this defendant's last name was spelled "Valasco"; however,
in this defendant's declaration, his last name was spelled "Velasco." As the Amended Complaint
was not amended to change the spelling, we will refer to this defendant as "Valasco."

## A.    Procedural Background

On August 22, 2017, this Court granted in part and denied in part Defendants' Motion to Dismiss.  (ECF Nos. 7 & 8.)  On August 30, 2017, Plaintiff filed an Amended Complaint asserting claims under both federal and state law.  (Am. Compl., ECF No. 10.)  Pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendants violated his constitutional rights under the Eighth and Fourteenth Amendments (Count I).  Plaintiff also alleges that Defendants negligently operated a motor vehicle, in violation of 42 Pa. Con. Stat. § 8542 (Count II).  On September 20, 2019, Defendants filed the instant Motion for Summary Judgment.  (Defs.' Mot., ECF No. 38.)[2] Defendants' Motion seeks summary judgment on all of Plaintiff's claims.  On October 8, 2019, Plaintiff filed a Response in Opposition.  (Pl.'s Resp., ECF No. 39.)[3]

---

[2] Defendants attached the following exhibits to their Motion: the deposition transcript of Chief Inspector Joseph Evans (Exhibit A); the declaration of Deputy Sheriff Valasco (Exhibit B); and the declaration of Deputy Sheriff Lopez (Exhibit C).  There are three exhibits attached to the deposition transcript of Chief Inspector Joseph Evans: the Philadelphia Sheriff's Office prisoner transport directive (Exhibit 2); the incident reports from November 14, 2016 authored by Valasco, Lopez, and Evans (Exhibit 4); and the list of prisoners transported in wheelchairs by the Transportation Unit of the City of Philadelphia Office of the Sheriff from January 1, 2014 through June 28, 2019 (Exhibit 5).  Attached to both the declarations of Valasco and Lopez are six photographs depicting the outside and inside of the wheelchair van used to transport Plaintiff on November 14, 2016.

[3] Plaintiff attached only one exhibit to his Response: the declaration of Plaintiff (Exhibit 1).  A plaintiff's declaration may create genuine issues of material fact.  *See Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 320-21 (3d Cir. 2014) ("[A] single, non-conclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment.  This remains true even if the affidavit is 'selfserving.'"); *accord Paladino v. Newsome*, 885 F.3d 203, 210 (3d Cir. 2018); *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161–63 (3d Cir. 2009).

## B.     Factual Background[4]

The record before this Court contains the following facts. Victor Lopez and Javier Valasco were deputy sheriffs assigned to the Transportation Unit of the City of Philadelphia Office of the Sheriff. (Lopez Decl. ¶¶ 4, 6, Defs.' Mot. Ex. C.; Valasco Decl. ¶¶ 2, 6, Defs.' Mot. Ex. B.) The Transportation Unit transports inmates from Pennsylvania prisons to the CJC for court appearances. (Valasco Decl. ¶ 7.) Chief Inspector Joseph Evans has been a Captain in the Transportation Unit for the last seven and a half years. (Evans Dep. 6, 82, Defs.' Mot. Ex. A.) The City of Philadelphia designated Evans to testify on behalf of the Office of the Sheriff. (*Id*. at 8.)

The Office of the Sheriff has a general written directive, titled "Prisoner Transport" dated "May 12, 1988, Revised August 1, 2014." (*Id*. at Ex. 2.) Regarding prisoners with physical handicaps, this general directive provides that "special care and consideration" will be given to prisoners with physical handicaps. (*Id*.) This general directive does not instruct on the use of seat belts for prisoners with or without physical handicaps. Other than this general directive, there are no other written directives on the transportation of prisoners. (*Id*. at 8-11, 45.)

There are, however, unwritten standard operating procedures that Evans communicates to the deputies. (*Id*. at 30-31, 45-46.) Evans instructs deputies that a prisoner using a wheelchair should be strapped in with a seat belt fastened across the lap and shoulder and the wheelchair should be secured with four hooks. (*Id*. at 12-14, 22.) Evans instructs deputies to fasten the seat belt and secure the hooks for the prisoner using a wheelchair. (*Id*. at 23.) Evans advises deputies

---

[4] We view all of the facts and draw all reasonable inferences therefrom in the light most favorable to Plaintiff, the non-moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

that a prisoner using a wheelchair is not permitted to ride without the seat belt and hooks in place or fasten the seat belt and secure the hooks himself. (*Id*. at 23, 25.)

Evans informs deputies that prisoners using wheelchairs can be transported in the same van with prisoners who are not using wheelchairs. (*Id*. at 18.) For example, a van can transport eight other prisoners along with one wheelchair user. (*Id*. at 18-19.) All prisoners, including the prisoner using a wheelchair, are handcuffed. (*Id*. at 20-21.) According to Evans, prisoners who are not wheelchair users are not required to use a seat belt, and due to security concerns, deputies are not permitted to go into the van to fasten the seat belts of prisoners who are not wheelchair users. (*Id*. at 20.) Although these prisoners are handcuffed, they can move their hands enough to fasten the seat belts themselves, if they choose. (*Id*. at 20-21, 35.) There is no physical record of this training. (*Id*. at 40-41.)

Every morning, Evans attaches written instructions to the deputies' assignment sheets, advising deputies when there is a wheelchair user on-board and instructing deputies that the wheelchair user should be secured with a seat belt and the wheelchair strapped down with hooks. (*Id*. at 9, 32-33, 51-52.) Evans did not provide an example of these written instructions. (*Id*. at 33.) Neither Evans nor any other Transportation Unit supervisors are present at the prison pick-up site. (*Id*. at 31-32, 50-51.)

Deputies Valasco and Lopez received on-the-job training on how to properly and safely secure wheelchair users in wheelchair vans. (Valasco Decl. ¶ 11; Lopez Decl. ¶ 11.) Before each transportation assignment, the supervisor reminds them to properly secure wheelchair users. (Valasco Decl. ¶¶ 12-13; Lopez Decl. ¶¶ 12-13.) Valasco and Lopez can be subject to discipline for not following the directives, for failing to report an injury of a prisoner, and for providing

false information to a supervisor investigating a transportation incident. (Valasco Decl. ¶¶ 14-16; Lopez Decl. ¶¶ 14-16.)

On November 14, 2016, Valasco and Lopez were assigned to pick up nine prisoners from SCI Graterford and transport them to the CJC. (Valasco Decl. ¶¶ 17-21; Lopez Decl. ¶¶ 17-21; Evans Dep. Ex. 4.) Plaintiff was one of the prisoners. (Valasco Decl. ¶ 18; Lopez Decl. ¶ 18; Evans Dep. Ex. 4.) Valasco and Lopez were notified by their supervisor that Plaintiff was the only wheelchair user and that a wheelchair van was assigned. (Valasco Decl. ¶¶ 18-21; Lopez Decl. ¶¶ 18-21.)

At SCI Graterford, Valasco and Lopez went to a receiving room to process the nine prisoner passengers. (Valasco Decl. ¶ 27; Lopez Decl. ¶ 27.) It took an hour for all the prisoners to be strip-searched and escorted to the van. (Valasco Decl. ¶ 28; Lopez Decl. ¶ 28.) An SCI Graterford supervisor wheeled Plaintiff into the van. (Valasco Decl. ¶ 30.) Valasco and the SCI Graterford supervisor secured Plaintiff and his wheelchair inside the van.[5] (*Id*. at ¶ 29.) Lopez then escorted the remaining prisoners inside the van. (Lopez Decl. ¶ 30.) The van departed SCI Graterford at about 8:00 a.m. (Valasco Decl. ¶ 34; Lopez Decl. ¶ 32.) Valasco drove the van and Lopez sat, facing the driver's side of the cab, between the cab and first row of prisoners. (Lopez Decl. ¶¶ 35-36; Valasco Decl. ¶ 41.) Lopez visually checked on the prisoners on

---

[5] It is disputed how Plaintiff was secured inside the van. Valasco stated that he secured Plaintiff's wheelchair using the hooks, (Valasco Decl. ¶ 31), and then he fastened Plaintiff's shoulder and lap seat belt. (*Id*. at ¶ 33.) Valasco and Lopez's incident reports confirmed that Plaintiff's seat belt had been fastened initially. (Evans Dep. Ex. 4.) When Evans inspected the van after the incident, he observed the wheelchair secured by hooks. (*Id*. at 57, 59.)

In contrast, according to Plaintiff, "[n]o and/or no adequate seatbelts or other safety apparatus for securing the wheelchair to the van or me to the wheelchair or the other occupants to their seats inside the van were used on the trip." (Pl.'s Decl. ¶ 2, Pl.'s Mot. Ex. 1.) Plaintiff stated that his wheelchair was lifting off the floor during the trip. (*Id*. at ¶ 6.)

occasion. (Lopez Decl. ¶ 37.) The drive to the CJC was about two hours.[6] (Valasco Decl. ¶ 35; Lopez Decl. ¶ 32.)

At about 10:00 a.m., the van was approaching the CJC. (Valasco Decl. ¶ 35; Lopez Decl. ¶ 32.) As Valasco drove around City Hall, at the traffic light at Market Street and Penn Square, on the east side of City Hall, a prisoner alerted Lopez that Plaintiff had fallen out of his wheelchair.[7] (Valasco Decl. ¶ 41; Lopez Decl. ¶ 40.)

---

[6] It is disputed how Valasco drove the van and whether any prisoners complained during the trip. Valasco stated he never stopped the van suddenly. (Valasco Decl. ¶ 47.) Lopez stated he never heard an inmate complain about Valasco's driving and that Valasco never sped or suddenly stopped. (Lopez Decl. ¶¶ 38, 46.)

However, according to Plaintiff, the other prisoners complained to Valasco and Lopez about the unsafe conditions: Plaintiff's wheelchair sliding back and forth and Valasco driving the van at high speeds. (Pl.'s Decl. ¶¶ 5-9.) According to Plaintiff, Valasco and Lopez responded to the prisoners' complaints by saying "don't come to jail." (Id. at ¶ 8.)

[7] It is disputed why Plaintiff fell out of his wheelchair. Valasco and Lopez claim that traffic was very heavy around Penn Square and Valasco only drove about 5 m.p.h. (Valasco Decl. ¶¶ 39-40; Lopez Decl. ¶ 39.) Valasco and Lopez do not know why Plaintiff fell out of his wheelchair or if Plaintiff unfastened his seat belt. (Valasco Decl. ¶ 47; Lopez Decl. ¶ 47.) Lopez noted that it is not unusual for prisoners to unfasten their seat belts while travelling. (Lopez Decl. ¶ 47.)

Evans's incident report indicates that Valasco and Lopez had fastened Plaintiff's seat belt and strapped down the wheelchair prior to departure, and that, during the trip, Plaintiff unfastened the seat belt and fell out of his wheelchair. (Evans Dep. Ex. 4.) Evans came to the conclusion that Plaintiff had unfastened his seat belt based on the circumstances relayed to him by Lopez and Valasco. (Id. at 62-63.) Valasco and Lopez told Evans that they did not see Plaintiff unfasten his seat belt. (Id. at 63, 66-67.) Evans did not speak to any prisoners involved because he believed they would be unreliable or biased. (Id. at 56-57, 68.) According to Evans, absent Plaintiff unfastening the seat belt, he should not have come loose or fallen. (Id. at 15.) Although all prisoners are handcuffed during transport, they can move their hands enough to fasten or unfasten the seat belts. (Id. at 20-21, 35.)

Plaintiff states that he was not secured with a seat belt and he never released himself from any restraints. (Pl.'s Decl. ¶¶ 2, 12.) Plaintiff states that Valasco was driving too fast around a curve and slammed on the brakes, causing several prisoners to be ejected from their seats and Plaintiff to be thrown out of the wheelchair head first into the metal grate of the van. (Id. at ¶¶ 11, 13.) According to Plaintiff, his handcuffs had prevented him from using his hands or feet to steady himself in the van. (Id. at ¶ 22.)

It is also disputed whether any prisoners fell on top of Plaintiff. Plaintiff states he landed upside down, with two prisoners on top of him. (Id. at ¶ 13.) Neither Valasco nor Lopez indicated that they saw any prisoners on top of Plaintiff. However, Evans admits there is no

Lopez immediately notified a CJC supervisor.  (Valasco Decl. ¶ 42; Lopez Decl. ¶ 41.)

Valasco activated the van's lights and siren and proceeded to the Juniper Street entrance of the

CJC.  (Valasco Decl. ¶ 43; Lopez Decl. ¶ 42.)  The CJC supervisor contacted Fire Rescue and

waited at the receiving garage for the van.  (Valasco Decl. ¶ 44; Lopez Decl. ¶ 43.)  Lopez and

Valasco exited the van and went downstairs to the cell block area to file an incident report.

(Valasco Decl. ¶ 45; Lopez Decl. ¶ 44.)  Plaintiff was transported to Hahnemann Hospital.

(Valasco Decl. ¶ 46; Lopez Decl. ¶ 45; Pl.'s Decl. ¶ 15.)  Plaintiff was admitted to the trauma

unit and remained at Hahnemann Hospital for three days.  (Pl.'s Decl. ¶ 16.)  Evans investigated

the incident and concluded that Plaintiff and his wheelchair had been properly secured initially

and that, during the trip, Plaintiff had unfastened his seat belt.  (Evans Dep. Ex. 4.)

The Transportation Unit compiled a list of all of the wheelchair users that it transported

between January 1, 2014 and June 28, 2019.  (*Id*. at Ex. 5.)  During that time, 1,145 wheelchair

users were transported by the Transportation Unit.  (*Id*. at Ex. 5.)  The list included three

reported incidents of a wheelchair user being injured during transport.  (*Id*. at 70-71.)  In two of

those reported incidents, the wheelchair user had been taken to a hospital.  (*Id*.)  Of the three

reported incidents, one is the instant matter.  (*Id*. at 70.)  The three reported incidents were

identified based on incident reports created by deputies when wheelchair users reported injuries.

(*Id*. at 71.)  The following potential incidents are not accounted for: prisoners who were injured

but did not self-report the injuries; prisoners who were injured and reported the injuries to the

deputy, but the deputy did not create an incident report; and prisoners who fell out of their

---

physical barrier preventing a prisoner who was not using a seat belt from sliding into a
wheelchair user during an accident.  (Evans Dep. 37.)  Evans acknowledged that if the van were
to tip over, prisoners not wearing seat belts would likely "wind up on the floor. . . . Either they
would go left and against the window or right and into the aisle."  (*Id*. at 36.)

wheelchairs but were not injured.  (*Id*. at 72-73, 79-80.)  The list compiled by the Transportation

Unit indicates that Jermaine Williams was transported nine times: (1) September 2, 2014; (2)

January 20, 2015; (3) January 6, 2016; (4) January 8, 2016; (5) May 25, 2016; (6) June 7, 2016;

(7) June 27, 2016; (8) November 14, 2016; and (9) February 15, 2017.[8]  (*Id*. at Ex. 5.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  A dispute is "genuine" if there is a sufficient evidentiary basis on

which a reasonable jury could return a verdict for the non-moving party.  *Kaucher v. Cty. of*

*Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986)).  "[A] factual dispute is material only if it might affect the outcome of the suit under

governing law."  *Id*.  The court must view the evidence in the light most favorable to the non-

moving party.  *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).  However, "unsupported

assertions, conclusory allegations, or mere suspicions" are insufficient to overcome a motion for

---

[8] There are factual disputes as to how Plaintiff and his wheelchair were secured on the
trips prior to the incident and whether those deputies were trained on how to transport a
wheelchair user.  Evans stated that he trains all deputies to secure wheelchair users with a
shoulder and lap seat belt and their wheelchairs with four hooks, and that he reminds his deputies
of the proper procedure with written instructions prior to each transportation assignment.  (Evans
Dep. 9, 32-33, 51-52.)

Plaintiff asserts that the deputies did not fasten his seat belt or secure his wheelchair on
any trip prior to the incident.  (Pl.'s Decl. ¶ 18.)  Plaintiff also asserts that "a majority of the
sheriff's personnel involved in those trips prior to 2017, were not trained and/or not
knowledgeable in practice about how to properly secure a wheelchaired prisoner in a van. Some
of them actually admitted that they did not know how to do it properly, one specifically told me
prior to the accident it was a 'short trip' and not to worry."  (*Id*. at ¶¶ 20-21).  Plaintiff states that
after the incident, lieutenants began checking to make sure Plaintiff and his wheelchair were
secured before departure and deputies began fastening the seat belt from behind to allow Plaintiff
to use his hands to secure himself.  (*Id*. at ¶¶ 19, 23.)

summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)).

Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."); *see also Matsushita Elec. Indus. Co.*, *v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## III. DISCUSSION

Defendants move for summary judgment on Count I, which alleges § 1983 claims against Valasco and Lopez and a *Monell* claim against the City of Philadelphia Office of the Sheriff. Defendants also move for summary judgment on Count II, which alleges negligence claims against all Defendants.

### A. Section 1983 claims (Count I)

Plaintiff asserts a violation of his Eighth and Fourteenth Amendment rights. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)

(citation and internal quotation marks omitted). A prisoner's right to be free of "cruel and unusual punishment in violation of the Eighth Amendment, [is] made applicable to the States by the Fourteenth [Amendment]." *Estelle v. Gamble*, 429 U.S. 97, 101 (1976).

A prisoner can assert an Eighth Amendment violation through an excessive force claim or a deliberate indifference claim. *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986). Plaintiff's Amended Complaint states:

> The individual defendants acted in reckless disregard of plaintiff's well-being, as they consciously disregarded the prisoners' right to be safely secured in the van, thereby manifesting indifference for plaintiff's safety, and rendering them aware that they were creating a substantial risk of serious harm; yet they chose to ignore the risk.

(Am. Compl. ¶ 25.) Moreover, neither party addresses excessive force in their filings. Therefore, we will treat Plaintiff's Eighth Amendment claim as a claim based upon Defendants' deliberate indifference to the serious risk of harm to Plaintiff.

To establish a deliberate indifference claim under the Eighth Amendment, a plaintiff must show through admissible evidence that:

> (1) he was incarcerated under conditions posing a substantial risk of serious harm,
>
> (2) the official was deliberately indifferent to that substantial risk to his health and safety, and
>
> (3) the official's deliberate indifference caused him harm.

*Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer*, 511 U.S. at 834). "'Deliberate indifference' in this context is a subjective standard: 'the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.'" *Id.* (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)). The Eighth Amendment imposes duties on officials to "take reasonable measures to guarantee the safety of inmates." *Farmer*, 511 U.S. at 832

(citations omitted). "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

"The restriction on cruel and unusual punishment contained in the Eighth Amendment reaches non-intervention just as readily as it reaches the more demonstrable brutality of those who unjustifiably and excessively employ fists, boots or clubs." *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002). If a corrections officer, "whether supervisory or not, fails or refuses to intervene when a constitutional violation . . . takes place in his presence, the officer is directly liable under Section 1983." *Id.* at 650 (citation and internal quotation marks omitted). "However, an officer is only liable if there is a realistic and reasonable opportunity to intervene." *Id*. at 651 (citation omitted). The encounter cannot be so brief that the officer did not have an opportunity to intervene. *Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018).

According to decisions by the Fourth, Fifth, and Eighth Circuits addressing Eighth Amendment claims in the context of prisoner transportation on a motion for summary judgment, liability arises not from a defendant driving recklessly or from the absence of seat belts, but rather from the defendant intending to harm a prisoner or refusing to slow down or fasten a prisoner's seat belt despite the prisoner's complaints.

In the case of *Thompson v. Commonwealth*, 878 F.3d 89 (4th Cir. 2017), the Fourth Circuit addressed a prisoner's transportation-related injuries. The plaintiff in *Thompson* was a prisoner transported in a van by defendants, two correctional officers. *Id*. at 94. The plaintiff was secured in "handcuffs, leg irons, a belly chain, and a black box" and could not fasten his seat belt. *Id*. The prisoner asked the defendants to fasten his seatbelt. *Id*. The defendants refused. *Id*. One defendant drove the van while the other defendant sat in the passenger seat. *Id*. The driver defendant drove at high speeds on curved roads. *Id*. As a result, the plaintiff was thrown

around in the van.  *Id*.  The plaintiff's shackles prevented him from protecting himself from the

walls of the van.  *Id*.  The plaintiff struck the steel mesh covering the van's windows, causing his

forehead, hands, and arms to bleed and bruise.  *Id*. at 94-95.  The plaintiff notified defendants of

his injuries.  *Id*. at 95. The plaintiff asked the driver defendant several times to drive more slowly

and carefully and the plaintiff pleaded with the passenger defendant to intervene.  *Id*.  Both

defendants responded by laughing and taunting the plaintiff about his history of writing

grievances.  *Id*.  With regard to the driver defendant, the Fourth Circuit concluded that because

the plaintiff had "alleged facts from which a reasonable factfinder could conclude that [the driver

defendant] maliciously subjected him to a rough ride, he [had] sufficiently alleged an Eighth

Amendment excessive force claim sufficient to survive summary judgment."  *Id*.  at 101-02.

With regard to the passenger defendant, the Fourth Circuit concluded that  because the plaintiff

had alleged facts from which a reasonable factfinder could conclude that the passenger defendant

subjectively knew of the serious risk to the plaintiff's safety and consciously disregarded that

risk by not taking any reasonable steps to prevent the plaintiff from being harmed, the plaintiff

had sufficiently alleged an Eighth Amendment deliberate indifference claim sufficient to survive

summary judgment.  *Id*. at 108-09.

     The Fifth Circuit reached a different result when it addressed a prisoner's transportation-

related injuries in the case of *Baughman v. Hickman,* 935 F.3d 302 (5th Cir. 2019).  The plaintiff

in *Baughman* was a prisoner transported in a van by defendant, a deputy sheriff.  *Id*. at 305.  The

plaintiff was "handcuffed, shackled, and not secured by a seatbelt."  *Id*.  The defendant drove the

van recklessly.  *Id*.  When the van hit a pothole or speed bump, the plaintiff was thrown out of

his seat.  *Id*.  The plaintiff sustained injuries.  *Id*.  The Fifth Circuit held that a prisoner's sworn

statement that "the van was being driven with rapid speed changes (though not necessarily

speeding), and when the van hit something in the road, the [prisoner] was thrown from his seat" was "not evidence of driving in a manner creating a substantial risk of serious harm." *Id.* at 308. Moreover, the Fifth Circuit found that "there [was] no evidence that [plaintiff] asked to have a seatbelt fastened and [defendant] refused, or that [plaintiff] asked [defendant] to slow down, or other evidence that would be some support for the [defendant's] awareness." *Id.* at 309. Without sufficient evidence of the defendant's driving creating the prisoner's substantial risk of serious harm and without any evidence of the defendant's awareness of the prisoner's substantial risk of serious harm, the Fifth Circuit concluded that the plaintiff "failed to marshal evidence in support of this [deliberate indifference] claim." *Id.*

In the case of *Brown v. Fortner*, 518 F.3d 552 (8th Cir. 2008), the Eighth Circuit addressed a prisoner's transportation-related injuries. The plaintiff was a prisoner transported in a van driven by defendant, a corrections officer. *Id.* at 556. The plaintiff and the other prisoner passengers were "fully shackled with belly chains, handcuffs, leg chains, and a black box covering the handcuffs." *Id.* The prisoners' shackles prevented them from being able to fasten their seat belts. *Id.* As they were being loaded into the van, the prisoners asked some corrections officers to secure them with seat belts, however the corrections officers refused and taunted the prisoners. *Id.* The defendant then drove the van recklessly, "in excess of the speed limit, following too closely to the lead van, crossing over double-yellow lines, and passing non-convoy cars when the road markings clearly prohibited doing so." *Id.* at 559. The prisoners asked the defendant to slow down. *Id.* at 556. The defendant ignored the prisoners' requests and turned up the radio. *Id.* The van was involved in a collision with another vehicle. *Id.* The shackles prevented the prisoners from bracing themselves during the collision. *Id.* The plaintiff sustained injuries as a result. *Id.* The Eighth Circuit concluded that since the evidence showed plaintiff

was prevented from securing his own seat belt and had made multiple requests to be secured with a seat belt, and that the defendant drove recklessly and ignored the passengers' requests to slow down, there was evidence from which a reasonable jury could conclude that "there was a substantial risk of harm to [the plaintiff]" and that the defendant "knew of and disregarded the substantial risk [of] harm." *Id.* at 560.

District courts in this Circuit have similarly held, on a motion to dismiss, that a plaintiff has sufficiently stated an Eighth Amendment claim in the context of prisoner transportation when the complaint alleges that the defendant intended to harm the prisoner or refused to fasten the prisoner's seat belt, slow down, or intervene despite the prisoner's requests, but not when a complaint only alleges that the defendant drove recklessly or that the plaintiff did not have a seat belt. *See, e.g.*, *Scott v. City of Phila.*, No. 19-2871, 2019 U.S. Dist. LEXIS 129091, at *7-8 (E.D. Pa. 2019) (finding that plaintiff had failed to state an Eighth Amendment claim because the plaintiff only alleged that the police officers drove recklessly and did not plausibly allege that the police officers intended to punish or harm plaintiff or that the police officers had ignored any complaints by plaintiff); *Rodriguez v. Court Sheriff Official*, No. 19-CV-605, 2019 U.S. Dist. LEXIS 28638, at *5-6 (E.D. Pa. 2019) (finding that plaintiff had failed to state a plausible deliberate indifference claim because the plaintiff only alleged that the court sheriff official drove recklessly and the plaintiff did not allege that the court sheriff official intended to harm plaintiff or drove recklessly over prisoners' complaints); *Stewart v. Wenerowicz*, No. 12-4046, 2015 U.S. Dist. LEXIS 114307, at *27-29 (E.D. Pa. 2015) (holding that the plaintiff sufficiently alleged a deliberate indifference claim against the officer who drove the vehicle erratically and at excessive speeds, ignoring the plaintiff's requests to slow down and taunting him, and that the plaintiff sufficiently alleged a failure to intervene claim against the officers who were "present

but not driving at the time of the incident" and who "failed to intervene to stop the driver from operating the vehicle in a reckless manner."); *Worthington v. Cty. of Northampton*, No. 13-6292, 2013 U.S. Dist. LEXIS 164226, at *2 (E.D. Pa. 2013) (dismissing plaintiff's § 1983 claim premised on allegations of only a lack of seat belts in the van and the van driver's negligence); *Stokes v. Lanigan*, Civil Action No. 11-407 (JBS), 2011 U.S. Dist. LEXIS 66650, at *8-10 (D.N.J. 2011) (dismissing plaintiff's Eighth Amendment claim because plaintiff's allegations that the corrections officers' failure to provide seat belts and careless driving caused plaintiff's injuries were insufficient to state a claim); *Otero v. Catalogne*, No. 08-282, 2010 U.S. Dist. LEXIS 102160, at *32-33 (W.D. Pa. 2010) (finding that plaintiff had stated a deliberate indifference claim because plaintiff had alleged that driver consciously ignored the plaintiff's request to stop driving recklessly).

### i. Defendants Valasco and Lopez

Defendants argue that Plaintiff has not produced sufficient admissible evidence that the van was not equipped with adequate safety restraints, that the prisoners were shackled, that the prisoners complained, and that Valasco slammed on the breaks while driving at an unsafe speed. Defendants argue that Valasco properly secured Plaintiff and drove in a safe manner. Plaintiff contends that there is a factual dispute as to whether Valasco and Lopez properly secured Plaintiff and the other passengers, and why two prisoners ended up on top of Plaintiff.

Viewing the evidence in the light most favorable to Plaintiff, there are clearly factual disputes as to how Plaintiff and his wheelchair were secured in the van, how Valasco drove the van, whether Plaintiff or any other prisoners complained about Valasco's driving or Plaintiff's lack of safety restraints, why Plaintiff fell out of his wheelchair, and whether any prisoners fell

on top of Plaintiff.  Accordingly, Defendants' Motion for Summary Judgment on the § 1983

claims against Valasco and Lopez will be denied.

### ii.    Liability of the City

Plaintiff also asserts a § 1983 claim against the City, alleging that its customs and

policies, and its failure to train its deputies in the secure transport of prisoners, violates his

constitutional rights.[9]  Because municipalities are not subject to *respondeat superior* liability, to

find the City liable, Plaintiff must show that the alleged unconstitutional conduct "implements or

executes a policy statement, ordinance, regulation, or decision officially adopted and

promulgated by the [City's] officers."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436

U.S. 658, 690 (1978); *see Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006).  A policy is "an

official proclamation, policy, or edict" by a decisionmaker with final authority, and a custom is a

practice that is "'so permanent and well-settled' as to virtually constitute law."  *Id.* (quoting

*Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  The municipal policy or custom

must be the "moving force" behind the constitutional violation such that there is a direct link

between the municipal policy or custom and the deprivation of constitutional rights.  *Bd. of Cnty.*

*Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).  If, as is the case here, the

policy or custom does not facially violate federal law, "causation can be established only by

demonstrating that the municipal action was taken with deliberate indifference as to its known or

obvious consequences."  *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (citation

and internal quotation marks omitted).

---

[9] In his Response in Opposition to summary judgment, Plaintiff for the first time alleged that Defendants' conduct also supported a failure to supervise claim against the City.  Plaintiff does not allege a failure to supervise claim in his Amended Complaint.  Nor is there any mention of facts to support this claim in his Declaration.  Accordingly, we will not consider whether Defendants' conduct independently supports a claim for failure to supervise.

Plaintiff's *Monell* claims against the City are premised on two theories: (1) the City failed to have an adequate policy in place that addressed the safe transportation of prisoners; and (2) the City failed to train its transportation unit deputies on the safe transportation of wheelchair users. We address these theories separately as they require a different showing of proof.

As to the first theory, Plaintiff does not base his *Monell* claim on an actual policy or custom, but instead on the absence of one. He argues that his injuries were the result of the City having "no intelligible policy concerning the safe transportation of wheelchair prisoners." (Pl.'s Resp. 7.) An absence of an official policy may also form the basis of a *Monell* claim. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 585 (3d Cir. 2003).

Here, there is no evidence in the record that the City had a policy requiring that wheelchair users be strapped into transportation vehicles with seat belts and hooks. The City does have a written directive, the "Prisoner Transport," that provides that "special care and consideration" be given to prisoners with physical disabilities. The directive is silent as to any requirement about securing wheelchairs with seat belts and hooks. Evans testified that despite the lack of a written policy, he personally trains the transportation unit deputies on securing wheelchair users. Indeed, Deputies Valasco and Lopez stated that they had been trained on how to properly and safely secure wheelchair users in the transportation vans.[10] However, training deputies on *how to* secure a wheelchair user with seat belts and hooks during transport is different than *requiring* wheelchair users be secured with seat belts and hooks during transport. In addition, the City does not have a policy that addresses the use of seat belts by non-wheelchair users who are being transported at the same time as wheelchair users. Instead, it is up to these prisoners whether they want to use seat belts. Plaintiff states that when he fell out of his

---

[10] As explained further below, the record reflects disputed factual issues as to the extent of that training.

wheelchair, two other prisoners in the van fell on top of him, causing him injury.  A reasonable jury could conclude that the City's failure to maintain a policy requiring use of seat belts in transportation vans—either by wheelchair users or non-wheelchair users—not only caused his injuries, but also reflects a deliberate indifference to the obvious consequences of not having a requirement in place.  Accordingly, summary judgment will be denied on Plaintiff's first *Monell* theory.

Plaintiff also contends that the City is liable under *Monell* for its failure to train its deputies about how to secure wheelchair users with seat belts and hooks during transport.  The City's failure to adequately train its transportation unit deputies can subject it to liability where the failure "amounts to deliberate indifference to the rights of persons with whom the [deputies] come into contact." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  Deliberate indifference can ordinarily be shown where the failure "has caused a pattern of violations." *Berg*, 219 F.3d at 276.  When there is not a pattern of violations, Plaintiff must establish that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.

There are disputed issues of fact as to whether transportation unit deputies were adequately trained on securing wheelchair users during transport.  Defendants present evidence that Captain Evans conducted this training, and that Deputies Valasco and Lopez received the training.  However, Plaintiff states that during the eight times he was transported in a wheelchair by Defendant leading up to his injury, he was never secured to the van with a seat belt or hooks.  Plaintiff also states that other transportation unit deputies admitted to him that they did not know

how to secure a wheelchair to the transportation van. In addition, a reasonable jury could conclude that the City's failure to train amounted to a deliberate indifference to Plaintiff's constitutional rights. A reasonable jury could find the City deliberately indifferent based on the pattern of Plaintiff's prior times being transported without properly being secured. A jury could also find deliberate indifference because the need to train transportation deputies on securing wheelchair users during transport "can be said to be so obvious," *City of Canton*, 489 U.S. at 390, or "may be a highly predictable consequence of a failure to equip [deputies] with specific tools to handle recurring situations." *Bd. of Cty. Comm'rs of Bryan Cty., Okl.*, 520 U.S. at 409. Viewing the evidence in the light most favorable to Plaintiff, there are factual disputes as to whether Plaintiff and his wheelchair were secured on the trips prior to the injury and whether those deputies were trained on how to transport a wheelchair user. Therefore, we are compelled to deny Defendants' Motion for Summary Judgment as to Plaintiff's *Monell* claim against the City of Philadelphia Office of the Sheriff.

### B. Negligent operation of a Commonwealth motor vehicle (Count II)

Pursuant to 42 Pa. Con. Stat. § 8542, a local agency shall be liable for damages from a personal injury as a result of its employees' acts if the following two conditions are met:

> (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
>
> (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

42. Pa. Con. Stat. § 8542(a). Essentially, a plaintiff must establish that: (1) "damages would be recoverable under common law or a statute creating a cause of action if the injury were caused

by a person not having available a defense of governmental immunity or official immunity[;]" and (2) "the injury was caused by the negligent acts of the local agency . . . with respect to one of the categories listed in subsection (b)." *Moon v. Dauphin Cty.*, 129 A.3d 16, 20 (Pa. Commw. Ct. 2015) (citations and internal quotation marks omitted).

"[I]n order to prevail in a negligence action under common law, the plaintiff must establish that: (1) the defendant owed a duty of care to the plaintiff; (2) that duty was breached; (3) the breach resulted in the plaintiff's injury; and (4) the plaintiff suffered an actual loss or damages." *Brown v. Dep't of Transp.*, 11 A.3d 1054, 1056 (Pa. Commw. Ct. 2011). "Negligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances." *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998) (citation omitted). "The mere occurrence of an accident does not establish negligent conduct. Rather, the plaintiff has the burden of establishing, by a preponderance of the evidence, that the defendant engaged in conduct that deviated from the general standard of care expected under the circumstances, and that this deviation proximately caused actual harm." *Id.* (citations omitted).

Under subsection (b), one of the categories of acts which may impose liability is "operation of any motor vehicle." 42. Pa. Con. Stat. § 8542(b)(1). According to the Pennsylvania Supreme Court, "operation of a vehicle reflects a continuum of activity." *Balentine v. Chester Water Auth.*, 191 A.3d 799, 810 (Pa. 2018) (citation and internal quotation marks omitted). The Pennsylvania Supreme Court defines the operation of a motor vehicle as "a series of decisions and actions, taken together, which transport the individual from one place to another. The decisions of where and whether to park, where and whether to turn, whether to engage brake lights, whether to use appropriate signals, whether to turn lights on or off, and the

like, are all part of the 'operation' of a vehicle." *Id.* (citation and internal quotation marks omitted).

Defendants argue that Plaintiff cannot sue them under the vehicle exception to immunity because Plaintiff has not produced sufficient admissible evidence that he fell out of his wheelchair because of the way Valasco secured him or drove the van and there is insufficient evidence that Valasco negligently operated the van. Plaintiff responds that there is a factual dispute as to whether Valasco and Lopez properly secured Plaintiff and the other passengers in the van, how Valasco drove the van, and why two passengers ended up on top of Plaintiff.

Viewing the evidence in the light most favorable to Plaintiff, there are factual disputes as to how Plaintiff and his wheelchair were secured in the van, how Valasco drove the van, whether Plaintiff or any other prisoners complained about Valasco's driving or Plaintiff's lack of safety restraints, why Plaintiff fell out of his wheelchair, and whether any prisoners fell on top of Plaintiff. Accordingly, we will deny Defendants' Motion for Summary Judgment on the negligence claim as to all Defendants.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment will be denied. An appropriate Order follows.

BY THE COURT:

**R. Barclay Surrick, J.**