IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERMAINE WILLIAMS | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 17-2697 |
| CITY OF PHILADELPHIA OFFICE OF | : | |
| THE SHERIFF, ET AL. | : | |

## MEMORANDUM

**SURRICK, J.**                                                                                                                                     **FEBRUARY 20, 2023**

Presently before the Court is Plaintiff's Motion to Reconsider Ruling and/or *In Limine* To Be Allowed To Present the Eyewitness' Testimony In Rebuttal If Relevant (ECF No. 72) and Defendants' Response in opposition thereto (ECF No. 76). For the following reasons, Plaintiff's Motion will be **DENIED**.

**I.**       **RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

This case arises from an incident (the "Van Incident") that occurred on November 14, 2016, during the transport of Plaintiff, who was in a wheelchair, and eight other prisoners from State Correctional Institution Graterford to the Criminal Justice Center in Philadelphia. At the time of the Van Incident, the van was owned by Defendant the City of Philadelphia Office of the Sheriff (the "Sheriff's Office") and was staffed by Defendant Deputy Sheriff Javier Velasco, the driver, and Defendant Deputy Sheriff Victor Lopez (collectively, the "Deputies"). Plaintiff alleges that Deputy Velasco was driving at an unsafe speed as he rounded the corner to the east side of Philadelphia City Hall, and that Velasco slammed on the brakes, causing Plaintiff and

---

[1] Additional background is contained in the Court's Memoranda addressing Defendants' Motion for Summary Judgment and the parties' Motions *in Limine*. (ECF Nos. 43, 67.)

other inmates to be ejected from their seats toward a grate inside the van.  Plaintiff claims that he ended up on the floor of the van with two other inmates on top of him.  He further claims that neither he nor the other inmates were properly secured inside the van.  Defendants deny any liability and specifically deny that the Deputies failed to properly secure Plaintiff before beginning the transport and that Deputy Velasco drove around City Hall in an unsafe manner.

On June 15, 2017, Plaintiff filed a Complaint against the Sheriff's Office and the Deputies, asserting claims under both federal and state law.  (Compl., ECF No. 1.)  On August 30, 2017, Plaintiff filed an Amended Complaint asserting a constitutional claim under 42 U.S.C. § 1983 for alleged violation of his Eighth and Fourteenth Amendment rights (Count I) and a state law claim for negligent operation of a motor vehicle under 42 Pa. C.S.A. § 8542 (Count II).  (Am. Compl., ECF No. 10.)

On October 3, 2017, with the agreement of counsel, the Court ordered this action consolidated for purposes of medical discovery with Plaintiff's separate action against the Pennsylvania Department of Corrections (the "DOC") and two Pennsylvania corrections officers regarding a transport incident that occurred on January 19, 2015 (the "DOC Action").  (*See* ECF No. 16; *Williams v. Whitaker et al.*, No. 16-cv-6379, ECF No. 11.) [2]  Thereafter, the Court conducted a series of status conferences in the consolidated actions.  (*See* ECF Nos. 19, 21, 23, 25, 27, 29, 32, 34.)  On December 19, 2018, the Court issued a Scheduling Order setting a trial date and the remaining pretrial deadlines.  (ECF No. 36.)  On April 29, 2019, at the parties' request, the Court issued an Amended Scheduling Order extending the fact discovery deadline to August 23, 2019, and the dispositive motion deadline to September 20, 2019.  (ECF No. 37.)  On

---

[2] The DOC Action settled and was dismissed on January 5, 2023, pursuant to Local Rule 41.1(b).  (*Id.*, ECF No. 63.)

July 19, 2019, Plaintiff's counsel took the Rule 30(b)(6) deposition of Sheriff's Office Chief Inspector Joseph Evans.  (Evans Dep. at 1, 6, 8, Defs.' MSJ Ex. A, ECF No. 38-1.)  The Evans deposition transcript reflects that Plaintiff's counsel had the Sheriff's Office Incident Report listing the names of the other prisoner passengers in the Van Incident before the August 23, 2019, discovery deadline.[3]  (Incident Report, Evans Dep. at 54-68, Ex. 4.)

      Defendants subsequently filed a timely Motion for Summary Judgment, which the Court denied on January 21, 2020.  (ECF Nos. 43, 44.)  On May 18, 2022, after a settlement conference and further status conferences, the Court issued a Second Amended Scheduling Order setting a trial date of January 17, 2023, and requiring the parties, *inter alia*, to exchange trial witness and exhibit lists by January 2, 2023, and to submit the same to the Court by January 9, 2023.  (ECF No. 54.)  On January 9, 2023, the parties' submitted their respective witness lists to the Court, neither of which listed any of the other Van Incident prisoner passengers as trial witnesses.

      On Tuesday, January 17, 2023, minutes before the commencement of trial, Plaintiff's counsel approached Court staff *ex parte* seeking the Court's permission to present testimony by video link of Terrence Mitchell, who, according to Plaintiff's counsel, was one of the prisoner passengers in the Van Incident and is currently incarcerated in a New Jersey prison.  Plaintiff's counsel advised that he first attempted to locate other prisoner passengers via internet searches the Friday before trial, that he contacted Mitchell through a third party the weekend before trial, that Mitchell had agreed to testify about the Van Incident, but that Plaintiff had not yet arranged for or even discussed the proposed video link testimony with authorities at the New Jersey prison

---

[3] Defendants' counsel has represented, and Plaintiff's counsel has not disputed, that Defendants produced the Sheriff's Office Incident Report in 2018 with their Rule 26(a)(1) initial disclosures.

where Mitchell is housed. Plaintiff's counsel further advised that he had neither provided Defendants' counsel the proposed witness' name nor even informed them of his intent to present an undisclosed witness. After hearing argument from both sides on the record, the Court denied Plaintiff's request to call Mitchell as a witness. Shortly after this ruling and before jury selection could begin, the Court continued the trial for reasons unrelated to this litigation, and trial is now scheduled to begin February 27, 2023. In the interim, on January 19, 23, and 25, 2023, Plaintiff's counsel sent the Court a series of emails informally requesting permission to call Mitchell as a "rebuttal" witness. On February 6, 2023, Plaintiff filed the Motion for Reconsideration addressed herein.

## II.     LEGAL STANDARD

### A.     Motion for Reconsideration

"Eastern District of Pennsylvania Local Rule 7.1(g) requires that '[m]otions for reconsideration or reargument shall be served and filed within fourteen (14) days after the entry of the order concerned." *Rodriguez v. City of Philadelphia*, No. 14-4435, 2018 WL 3036283, at *3 (E.D. Pa. June 18, 2018). Assuming the motion is timely, a party seeking reconsideration must demonstrate at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010); *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). A court should not grant a motion for reconsideration where it simply asks the court to "rethink what [it] had already thought through— rightly or wrongly." *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D.

Pa. 1993) (internal quotations omitted).  Reconsideration is an extraordinary remedy that is to be granted sparingly because of the courts' interest in the finality of judgments.  *See, e.g.*, *Conway v. A.I. duPont Hosp. for Child.*, 2009 WL 1492178, at *2 (E.D. Pa. May 26, 2009).

### B. Failure to Comply with Disclosure Rules and Orders

Federal Rule of Civil Procedure 26 specifies in detail the early and ongoing disclosures required of a party.  Specifically, Rule 26(a) provides, *inter alia*, that a party must:

- without awaiting a discovery request, provide to the other parties[] the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment,  Fed. R. Civ. P. 26(a)(1)(A)(i);

- [at least thirty days before trial, unless the court orders otherwise,] provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment:  (i) the name and, if not previously provided, the address and telephone number of each witness— separately identifying those the party expects to present and those it may call if the need arises; . . .  Fed. R. Civ. P. 26(a)(3)(A)(i), (a)(3)(B); **and**

- supplement or correct its disclosure or response:  (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; . . . Fed. R. Civ. P. 26(e)(1)(A).

Failure to comply with the Rule 26 disclosure obligations exposes the disobedient party to the sanctions set forth in Rule 37, which provides, in pertinent part:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Fed. R. Civ. P. 37(c)(1).  "Substantial justification" for the failure to make a required disclosure is only satisfied by "justification to a degree that could satisfy a reasonable person that parties

5

could differ as to whether the party was required to comply with the disclosure request." *United States v. Dentsply Intern., Inc.*, No. 99-5, 2000 WL 654378, *7 (D. Del. May 10, 2000); *see also Henrietta D. v. Giuliani*, No. 95-0641, 2001 WL 1602114, *5 (E.D.N.Y. Dec. 11, 2001) ("The test of substantial justification is satisfied if there exists a genuine dispute concerning compliance." (internal quotation omitted).)

In determining whether to exclude undisclosed evidence, courts consider the following factors: "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000). Other potentially relevant considerations are the party's explanation for failing to disclose as well as the importance of the excluded evidence. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012).

## III.    DISCUSSION

Applying the foregoing standards to the facts and record in this matter, the Court finds absolutely no basis to grant Plaintiff's Motion for Reconsideration. As a threshold matter, the Motion is untimely. As noted above, Local Rule 7.1 requires that a motion for reconsideration be filed within 14 days after entry of the order at issue. Local Rule 7.1(g). The Court denied Plaintiff's oral motion and precluded Mitchell's testimony from the bench, on the record, on January 17, 2023, and that Order was recorded in the proceeding Minutes docketed the same day. (ECF No. 69.) Accordingly, Plaintiff was required to file any Motion for Reconsideration no later than January 31, 2023, but did not file it until February 6, 2023. This untimeliness alone is a

proper ground for denial of the Motion.[4]  *See, e.g.*, *Carson v. Tucker*, No. 20-399, 2021 WL 1018757, at *2 (E.D. Pa. Mar. 17, 2021) ("Rule 7.1(g) states, in no uncertain terms, that the fourteen-day period for filing a motion for reconsideration runs from the date of 'the entry of the order concerned. . . .'"); *Bridges v. Colvin*, 136 F. Supp. 3d 620, 629 (E.D. Pa. 2015) (denying a motion for reconsideration of an interlocutory order that was filed one day late because it was untimely pursuant to Local Rule 7.1(g).)

Turning to the substance of the Motion, Plaintiff fails to mention, let alone demonstrate, any of the grounds for a cognizable motion for reconsideration.  It is abundantly clear that there has been no intervening change in controlling law nor the emergence of previously unavailable evidence since the Court's January 17, 2023, Order.  The Court can only assume that had Plaintiff addressed the standard, he would have claimed that reconsideration is necessary to correct a clear error of law or fact or to prevent manifest injustice.  No manifest justice can be found unless the court is persuaded "not only [that] the prior decision [was] wrong, but that it was clearly wrong and that adherence to the decision would create a manifest injustice.'"  *Schutter v. Herskowitz*, No. 07-3823, 2008 WL 3911050, at *1 n.2 (E.D. Pa. Aug. 22, 2008) (citation and internal quotation omitted); *see also White v. Home Depot, Inc.*, No. 17-4174, 2018 WL 4002009, at *1 (E.D. Pa. Aug. 21, 2018) ("A party may not obtain reconsideration merely by repeating arguments and evidence previously raised.").  Not only is the Court unpersuaded that the January 17, 2023 Order was clearly wrong, it is satisfied that the ruling was and remains correct and just under the standards discussed in Section II(B), *supra*.

We address these standards briefly.  First, Plaintiff's eleventh hour—and initially *ex*

---

[4] The Court notes that Plaintiff's counsel's emails to Chambers attempting to informally revisit the January 17, 2023, Order were not motions, are not of-record, and did not excuse

*parte*—attempt to present Mitchell's testimony did, in fact, greatly surprise Defendants' counsel. It required that the Court allow a brief recess for Defendants to hurriedly formulate their arguments in opposition.  Moreover, allowing Plaintiff to call Mitchell—who was not deposed or identified as a witness by Plaintiff at any time, up to and including in his witness list submitted to the Court only days before trial—would work substantial prejudice to Defendants.  Defendants presumably elected not to depose Mitchell or the other prisoner passengers, then prepared their witness list, examinations, and defense strategy on the reasonable assumption that Plaintiff would not call Mitchell or any of those individuals as trial witnesses.  *See Walsh v. Fusion Japanese Steakhouse, Inc.*, 585 F. Supp. 3d 766, 787 (W.D. Pa. 2022) (excluding undisclosed evidence where plaintiff would be prejudiced and surprised by its admission); *Wachtel v. Guardian Life Ins.*, 2005 U.S. Dist. LEXIS 51523, at *23 (D.N.J. 2005) ("[P]rejudice exists when the surprised party likely would have conducted discovery differently. . . . [D]efendants' late disclosure has, effectively, deprived plaintiffs of the opportunity to conduct thorough fact investigation and to depose the witnesses.").

    In a curious interpretation of the litigation process and Federal Rules of Civil Procedure, Plaintiff proffers the following argument to both justify his failure to timely disclose Mitchell as a witness and to counter any argument that Defendants would be prejudiced by his testimony. Plaintiff contends that **<u>he</u>** has been prejudiced by Defendants' decision not to interview, depose, or call as witnesses Mitchell and the other prisoner passengers and, in fact, Plaintiff argues that Defendants should be subject to an adverse "willful blindness" instruction for this decision. Suffice it to say that Plaintiff has not cited, nor is the Court aware of, any authority requiring Defendants to take the depositions or present trial testimony of potentially adverse witnesses

---

compliance with the deadline prescribed by Local Rule 7.1(g).

simply because it might benefit Plaintiff or save him the time and expense of conducting his own discovery.  Plaintiff's apparent suggestion that Defendants had the obligation to depose every witness known to both parties through depositions or document discovery would turn the Rule 26 disclosure framework into what one court described as a "whack-a-mole game" in which "[a] risk-averse party must either expend time and money taking a deposition that could prove worthless, or risk surprise at trial." *Poitra v. Sch. Dist. No. 1 in the Cnty. of Denver*, 311 F.R.D. 659, 667 (D. Colo. 2015); *see also Est. of Smart by Smart v. Chaffee,* No. 14-2111, 2020 WL 7643505, at *6 (D. Kan. Dec. 23, 2020) ("There can be no doubt that 'defendants are not obligated to interview every potential witness, but instead are entitled to rely on Plaintiffs, who have the burden of proof, to set forth those witnesses they intend to call to satisfy their burden and then respond accordingly.'" (quoting *Guerrero v. Meadows*, 646 F. App'x 597, 600 (10th Cir. 2016)).)  Plaintiff's argument does not justify his noncompliance with the disclosure rules and this Court's Orders, nor does it counter the obvious prejudice Mitchell's testimony would cause Defendants were it permitted.

Defendants' inability to cure the prejudice and the disruption the undisclosed witness would cause to the efficient trial of the case can be addressed together.  Plaintiff suggests that any prejudice or disruption can be cured by simply allowing Defendants to take Mitchell's deposition.  Plaintiff, however, does not address the obvious fact that this "cure" of deposing just this one incarcerated witness would almost certainly require a further continuance of the trial in a case that has already been pending for more than five years.  Moreover, if the Court were to allow Mitchell as an eleventh-hour witness and authorize his prior deposition, Defendants would likely—and understandably—seek to depose each of the other seven prisoner passengers to ascertain whether their accounts of the Van Incident are consistent with Mitchell's.  The Court

will not open that Pandora's Box.

Plaintiff's insistence that Mitchell is vital to his case is woefully insufficient to overcome the factors above, particularly when Plaintiff has known that he was a potential witness for at least four years and did not seek to depose him during discovery or at any time prior to the day of trial. Moreover, the alleged importance of Mitchell's testimony to Plaintiff cuts both ways, as it is further evidence that allowing his testimony at this juncture would greatly prejudice Defendants.

Finally, the Court will not conclusively find that Plaintiff exhibited bad faith or willfulness. However, the conduct of Plaintiff and his counsel, including counsel's initial *ex parte* request that the Court allow Mitchell's surprise testimony, reflects, at a minimum, unfamiliarity with, or disregard of, both well-established discovery rules and this Court's Orders.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration will be denied. An appropriate order follows.

                                                     **BY THE COURT:**

                                                     */s/ R. Barclay Surrick*
                                                   **R. BARCLAY SURRICK, J.**